**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| 2294, LLC, a Delaware limited liability company, and SIGNET FASHION LLC, individually, as assignee of KF FASHION, LLC, and as assignee of KFN EVENTS, LLC,<br><br>Plaintiffs,<br><br>– against –<br><br>N4XT EXPERIENCES, INC., IMAD IZEMRANE, KEITH ABELL, and JOHN DOES 1–10,<br><br>Defendants. | Civil Action No. ___________<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs 2294, LLC ("2294") and Signet Fashion LLC ("Signet," and together with 2294, "Plaintiffs"), suing individually, as assignee of KF Fashion, LLC, and as assignee of KFN Events, LLC, by their undersigned counsel, Fox Rothschild LLP, for their Complaint against Defendants N4XT Experiences, Inc. ("N4XT"), Imad Izemrane ("Izemrane"), Keith Abell ("Abell," and with Izemrane, the "Individual Defendants"), and John Does 1–10 (collectively, "Defendants"), allege as follows, upon personal knowledge as to themselves and upon information and belief as to all other matters:

## NATURE OF THE ACTION

1. This is an action for trademark infringement, false designation of origin, false advertising, cybersquatting, and unfair competition under the Lanham Act, 15 U.S.C. §§ 1051 et seq., for declaratory relief, and for related claims under New York law, together with claims arising from N4XT's misappropriation of the capital that funded its rise.

2. For more than a decade, the names NEW YORK FASHION WEEK, NYFW, and NYFW THE SHOWS have identified a single source: the official New York Fashion Week event

and related products and services developed by Fashion Week, Inc. and IMG Worldwide, LLC ("IMG"), an affiliate of William Morris Endeavor ("WME").

3. On July 16, 2026, 2294 acquired that entire portfolio—the federal registrations, the international registrations, the nyfw.com domain, the official social-media accounts followed by approximately 9.19 million people, and all associated goodwill in the brands. Signet is 2294's exclusive licensee and the operator of the NYFW platform.

4. N4XT has no rights in any of the NYFW trademarks. N4XT is an event producer that, by its own admission in 2024, understood that IMG owned the NYFW registrations and set out to find a way around them. When IMG put N4XT on written notice that its NYFW-formative branding infringed IMG's rights, N4XT did not stop. When the United States Patent and Trademark Office ("USPTO") refused N4XT's NYFW-formative applications—repeatedly—because they were likely to be confused with the very registrations 2294 now owns, N4XT did not stop. When 2294 demanded on September 2, 2026, that N4XT cease its use, N4XT, through its counsel, announced that it "will not cease its activities." Instead, N4XT now holds itself out as the company that owns and operates New York Fashion Week, markets an "NYFW Collections" platform, and licenses "NYFW" branding to corporate sponsors as though the marks were its own.

5. N4XT's infringement did not arise in a vacuum. It was financed. Beginning in late 2024, N4XT induced KF Fashion, LLC ("KF Fashion") to enter a written joint venture under which KF Fashion would own 51% of a new company, KFN Events, LLC ("KFN Events"), and fund its New York Fashion Week initiatives, while N4XT—through Izemrane and Abell, who served as KFN Events' Managing Members—would produce the events for KF Fashion's sole benefit. KF Fashion invested in excess of $4,000,000. Instead of using the funds properly, N4XT used that money to build its own brand, to cultivate sponsors, designers, and venues for itself, and to attempt

to register the joint venture's marks in its own name. Then it walked away from the venture and took everything the money had built with it. Signet, as assignee of both KF Fashion and KFN Events, asserts the claims that belong to each: KF Fashion's claims as N4XT's contracting party and co-venturer, and KFN Events' claims for the misappropriation of its funds and assets and the usurpation of its business opportunities by its minority member and that member's designated Managing Members.

6. Every opportunity N4XT now exploits under the infringing NYFW banner—its designer roster, its venue network, its sponsor relationships, and the referral business it now claims in a separate lawsuit against Culture Shop LLC and its principal, Leslie Russo—traces directly or indirectly to capital that belonged to KF Fashion and to goodwill that belongs to 2294. Plaintiffs seek to stop the infringement, to recover what was taken, and to impose a constructive trust over its proceeds.

**THE PARTIES**

7. Plaintiff 2294, LLC is a Delaware limited liability company. 2294 is the owner of record and by assignment of the NYFW trademark portfolio described below.

8. Plaintiff Signet Fashion LLC is a New York limited liability company with its principal place of business at 165 Broadway, Floor 23, One Liberty Plaza, New York, New York 10006, and its registered address at 418 Broadway, Suite R, Albany, New York 12207.

9. Signet is the exclusive licensee of the NYFW marks and conducts the NYFW business, including the production, promotion, and sponsorship of New York Fashion Week events. Signet sues in three capacities: (a) individually, as exclusive licensee of the NYFW Marks; (b) as assignee of all claims, rights, and causes of action of KF Fashion, LLC against Defendants arising from or relating to the joint venture described below (the "KF Fashion Claims"), pursuant to a written assignment (the "KF Fashion Assignment"); and (c) as assignee of all claims, rights,

and causes of action of KFN Events, LLC against Defendants (the "KFN Claims"), pursuant to a written assignment (the "KFN Assignment," and together with the KF Fashion Assignment, the "Assignments").

10. Non-party KF Fashion, LLC is a Delaware limited liability company formed on August 1, 2024, with its principal place of business at 11333 Iowa Avenue, Los Angeles, California. KF Fashion owns a 51% majority membership interest in KFN Events and provided the capital that funded the KFN Events joint venture.

11. Non-party KFN Events, LLC is a Delaware limited liability company with its principal place of business at 11333 Iowa Avenue, Los Angeles, California 90025.

12. KFN Events is owned 51% by KF Fashion and 49% by N4XT.

13. Under the Framework Agreement described below, KFN Events was managed by, *inter alia,* Defendants Abell and Izemrane.

14. The KFN Assignment was duly authorized by KFN Events, acting through its majority member, KF Fashion, and a majority of its Managing Members.

15. N4XT, Izemrane, and Abell—the parties against whom the KFN Claims are asserted—were interested in that decision, and their consent was neither required nor sought.

16. N4XT, moreover, purported to terminate its participation in the joint venture by email from Abell dated October 11, 2025.

17. The KF Fashion Claims and the KFN Claims are distinct.

18. The KF Fashion Claims arise from KF Fashion's own rights as a party to the Framework Agreement, as the source of the KF Capital, and as N4XT's co-venturer, and seek redress for injury suffered by KF Fashion directly.

19. The KFN Claims belong to KFN Events itself and seek redress for injury to the company, including the misappropriation of company funds and assets and the usurpation of company opportunities by N4XT and its designated Managing Members.

20. Signet pleads each category separately below.

21. Where the same conduct injured both KF Fashion and KFN Events, Signet pleads in the alternative and does not seek duplicative recovery.

22. Defendant N4XT Experiences, Inc. is a Delaware corporation with its principal place of business at 6 St. Johns Lane, New York, New York 10013. N4XT also maintains offices at 9800 Wilshire Boulevard, Beverly Hills, California 90212.

23. Defendant Imad Izemrane is an individual who, upon information and belief, resides in or around Beverly Hills, California, and conducts substantial business in New York.

24. Izemrane is N4XT's co-founder and Chief Executive Officer and served as a Managing Member of KFN Events. Izemrane personally directed, authorized, and participated in the conduct alleged herein.

25. Defendant Keith Abell is an individual who, upon information and belief, resides in or around New York, and conducts substantial business in New York.

26. Abell is N4XT's Chairman and served as a Managing Member of KFN Events. Abell personally directed, authorized, and participated in the conduct alleged herein.

27. Defendants John Does 1–10 are persons and entities, presently unknown to Plaintiffs, who participated in, directed, induced, or knowingly benefited from the conduct alleged herein, including affiliates of N4XT to which joint venture assets or NYFW-branded business were transferred. Plaintiffs will amend this Complaint when their identities are learned.

## JURISDICTION AND VENUE

28. This Court has subject-matter jurisdiction over the Lanham Act claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), and over the related state-law unfair competition claims under 28 U.S.C. § 1338(b). The Court has supplemental jurisdiction over the remaining state-law claims under 28 U.S.C. § 1367(a) because they form part of the same case or controversy: N4XT's infringement is the continuation, and the fruit, of the joint venture misconduct alleged herein.

29. This Court has personal jurisdiction over N4XT because its principal place of business is in New York County, and over all Defendants because they transact business in New York, committed the infringing and tortious acts alleged herein in New York, and directed those acts at New York Fashion Week, an event held in this District.

30. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because N4XT resides here and a substantial part of the events giving rise to the claims—including the infringing NYFW events, promotions, and sponsorship sales—occurred here.

## FACTUAL ALLEGATIONS

### A. New York Fashion Week and the NYFW Marks

31. New York Fashion Week is among the most recognized fashion events in the world, and IMG has been at the center of its growth for a quarter century.

32. In 2001, IMG acquired from CFDA the "7th on Sixth" event-management operation that had brought New York's runway shows together in Bryant Park, and IMG thereafter produced New York Fashion Week as a world-class, centralized event, first at Bryant Park and, beginning in 2010, at Lincoln Center.

33. As the industry evolved, IMG evolved with it.

34. Designers increasingly sought distinctive, experiential settings for their collections, and social media and livestreaming allowed them to reach audiences far beyond a single runway tent.

35. IMG responded by bringing NYFW: The Shows to a series of new venues across Manhattan, including Skylight venues and, for more than five years, Spring Studios in TriBeCa, while supporting designers who chose to present throughout the city.

36. In May 2024, IMG announced that it would pivot from producing a centralized venue for NYFW: The Shows to focus on brand partnerships and creative collaborations between brands and designers, providing tailored support for designers' year-round needs.

37. IMG's leadership in moving New York Fashion Week to a multi-venue, designer-driven model shaped the decentralized format in which the event is presented today—the same format N4XT now claims as its own innovation.

38. Throughout that evolution, the NYFW and NEW YORK FASHION WEEK marks continued to identify a single source for the shows and related goods offered and service rendered in association therewith.

39. Since at least 2013, those marks have been used continuously in commerce to identify fashion-show entertainment services, ticketing, retail, and related goods and services originating from Fashion Week, Inc. and then IMG, which acquired Fashion Week, Inc.'s entire interest by assignment executed December 11, 2020 and recorded with the USPTO on January 5, 2021 at Reel/Frame 7150/0052.

40. By the time 2294 acquired the NYFW Marks on July 16, 2026, they had been in continuous use for more than thirteen years and many federally registered for more than a decade.

41. The NYFW portfolio includes, among others, and including the common law rights held in each, the following United States registrations (collectively, with all common-law rights and goodwill, the "NYFW Marks"):

| **Mark** | **Reg. No.** | **Register / Class** | **Goods / Services (summary)** |
|---|---|---|---|
| NYFW | 4,870,711 | Principal; Cl. 41 (renewed) (Reg. Dec. 15, 2015) | Fashion-show entertainment services |
| NYFW | 6,317,961 | Principal; Cl. 35 (Reg. Apr. 13, 2021) | Online retail store services featuring clothing |
| NYFW | 5,303,409 | Principal; Cl. 25 (Reg. Oct. 3, 2017) | Apparel, footwear, headwear |
| NYFW THE SHOWS | 6,909,952 | Principal (2(f) in part as to NYFW); Cl. 41 (Reg. Nov. 29, 2022) | Entertainment in the nature of fashion shows; organization of fashion shows |
| NYFW THE SHOWS NEW YORK FASHION WEEK BACKSTAGE FAVORITE and Design | 6,317,958 | Principal; Cl. 3 (Reg. Apr. 13, 2021) | Cosmetics |
| NEW YORK FASHION WEEK THE RUNWAY SHOWS | 5,206,534 | Supplemental; Cl. 41 (Reg. May 16, 2017) | Online entertainment ticket agency services |
| NYFW | 5,014,908 | Supplemental; Cl. 41 (Reg. Aug. 2, 2016) | Fashion-show entertainment services |
| NYFW THE RUNWAY SHOWS | 4,966,630 | Supplemental; Cl. 41 (Reg. May 24, 2016) | Online entertainment ticket agency services |

42. Registration No. 4,870,711 for NYFW has been registered on the Principal Register since December 15, 2015, and the USPTO has accepted and acknowledged its Section 8 and 15 declarations. That registration is incontestable and constitutes conclusive evidence of the validity of the mark, of the registrant's ownership, and of the exclusive right to use NYFW in commerce for the registered services. 15 U.S.C. §§ 1065, 1115(b). The remaining Principal Register registrations are prima facie evidence of the same. 15 U.S.C. §§ 1057(b), 1115(a) (Reg. No. 5,303,409 is also incontestable). Copies of the registration certificates are attached as **Exhibit "1"**.

43. In addition to its registrations, the NYFW portfolio includes the domain names nyfw.com, nyfwallaccess.com, nyfw.nyc, and newyorkfashionweekfirststage.com; official NYFW and Fashion Week accounts on Instagram, TikTok, Facebook, X, and YouTube with a combined following of approximately 9.19 million; and a Trademark Consent and Coexistence Agreement with the Council of Fashion Designers of America ("CFDA") dated January 11, 2019.

44. The NYFW Marks have been continuously used and promoted through these channels up to and through 2294's acquisition.

45. The official website nyfw.com remains active as the home of NYFW: The Shows, describing the event as a global platform for designers held biannually every February and September and publishing its schedule, press, and contact information.

46. The official Instagram accounts @NYFW and @fashionweek, with approximately 1 million and 5 million followers respectively, post frequently about NYFW runway shows and related fashion events, and were active as recently as July 2026.

47. The official "NYFW" and "Fashion Week" Facebook pages, with approximately 154,000 and 910,000 followers respectively, were likewise updated frequently and active through June and July 2026.

48. The official NYFW: The Shows YouTube channel publishes content tied to each February and September season.

49. Through more than a decade of continuous and substantially exclusive use, extensive promotion, and unsolicited media coverage, the NYFW Marks have become distinctive and acquired strong secondary meaning. The USPTO itself has repeatedly refused third-party NYFW-formative applications—including N4XT's—on the ground that they are likely to be confused with the NYFW Marks.

**B. N4XT Knew That IMG Owned NYFW and Set Out to Work Around It**

50. Izemrane is no stranger to the NYFW Marks. N4XT's own investor materials tout him as having "Co-Host[ed] and Co-Produce[d] NYFW in partnership with IMG for 16 seasons" through Spring Studios. Izemrane knew precisely who owned the brand. *See,* **Exhibit "2".**

51. On July 14, 2024, N4XT's lawyer, Bennett D. Krasner, wrote to N4XT summarizing "the status of the mark 'NYFW,'" acknowledging that IMG owned NYFW registrations, and advising N4XT on how to adopt NYFW-formative marks with "distinctive additional terms" such as "NYFW, A N4XT Experience." N4XT thereafter filed intent-to-use applications for NYFW, A N4XT EXPERIENCE (Ser. No. 98/611,878), NY FASHION WEEK, A N4XT EXPERIENCE (Ser. No. 98/611,887), NEW YORK FASHION WEEK, A N4XT EXPERIENCE (Ser. No. 98/611,871), and NYFW CENTER FOR EXPERIENTIAL FASHION (Ser. No. 98/614,518) (the "N4XT Experience Applications"). *See,* **Exhibit "3".**

52. The USPTO refused the N4XT Experience Applications on the ground, among others, that they were likely to be confused with IMG's registered NYFW Marks.

53. IMG then demanded, in writing, that N4XT immediately cease all use of the N4XT Experience marks and any other marks which are confusingly similar to the NYFW Marks, on

websites, social media, and otherwise, and agree in writing to refrain from any future use or registration of confusingly similar marks (the "IMG Demand").

54. N4XT refused, responding that the NYFW Marks were descriptive and threatening to petition to cancel IMG's registrations.

55. From that point forward, at the latest, every use by N4XT of NYFW, NEW YORK FASHION WEEK, or any confusingly similar designation was knowing and willful.

**C. The KFN Events Joint Venture**

56. In 2024, as IMG scaled back its centralized NYFW programming, N4XT approached KF Fashion with a proposal.

57. On or about December 29, 2024, N4XT, through Izemrane, circulated an investor presentation, styled as a presentation "furnished to potential investors by KFN Events" (the "N4XT Deck"). The N4XT Deck described a "unique, time-sensitive opportunity to assume control of NYFW without incurring any acquisition or licensing costs," and represented that N4XT had "partnered with KF Fashion . . . to form KFN Events, a new entity that will be the lead event producer during NYFW." *See,* Exhibit "3".

58. In the N4XT Deck, N4XT represented that KFN Events would be the vehicle for the venture's business. It stated that KFN Events had "secured an executed agreement with the Council of Fashion Designers of America (CFDA)," that this partnership "not only grants us legitimacy but also provides access to CFDA's vast network of over 500 American fashion designers," and that KFN Events would "partner[] with key executives who previously held leadership roles within IMG Fashion, including their former President, Leslie Russo." The N4XT Deck presented Izemrane, Ms. Russo (as "Lead Architect NYFW"), Noah Kozlowski, and Maxwell Osborne as "The KFN Events Team."

59. The N4XT Deck also represented that "[t]he N4XT and KFN Events teams have established relationships with key sponsors," that "[s]everal sponsors have already expressed strong interest," and that "[n]o other organization has this immediate access or the established trust with sponsors, positioning KFN Events as the ideal partner to drive sponsorship success." N4XT thus committed its sponsor relationships to KFN Events from the outset of the venture.

60. N4XT's own pitch to "assume control of NYFW without incurring any acquisition or licensing costs" shows that N4XT knew, from the outset, that the NYFW Marks belonged to IMG and planned to trade on them without a license.

61. KF Fashion and N4XT entered into a written agreement (the "Framework Agreement").

62. The Framework Agreement contains a confidentiality provision and Plaintiff will produce said agreement upon the entry of an appropriate protective order and/or leave of Court to file under seal. Defendants possess a copy of the Framework Agreement.

63. Under the Framework Agreement:

- KFN Events, LLC would be owned 51% by KF Fashion and 49% by N4XT (§ 4);
- Abell and Izemrane would serve, with KF Fashion's designees, as Managing Members of KFN Events (§ 5);
- KF Fashion would fund the New York events, and N4XT would "create, produce, operate and obtain sponsors" for those events without exceeding the approved budgets (§§ 7, 9);
- any in-kind sponsorship would be applied "for the sole benefit of KF Fashion," and "[a]ny revenue created as a result of the NY Event or the services provided by N4XT shall be paid directly to KF Fashion without any kind of withholding and/or set-offs" (§ 7);
- "[a]ny NYFW IP created, developed, or conceived as a result of or in connection with the formation and operations of any NYFW Events . . . shall be solely owned by KFN Events" (§ 8); and
- net profits would be distributed first to repay KF Fashion all of its investments plus 8% interest, and only then split between the parties (§ 10).

64. Central to the venture's value was a relationship with the Council of Fashion Designers of America, Inc. ("CFDA"), the trade association that publishes the official fashion week calendar in New York.

65. On September 19, 2024, KFN Events and CFDA executed a Professional Association Memo (the "CFDA Agreement"), signed for CFDA by its Chief Executive Officer, Steven Kolb, and for KFN Events by Izemrane as a member. A copy is attached as **Exhibit "4".**

66. Under the CFDA Agreement, CFDA agreed to partner strategically with KFN Events to develop a new model and campus for the fashion week season, preliminarily branded the "Center for Experiential Fashion"; KFN Events' event dates would mirror the CFDA calendar; and CFDA agreed that it "will not enter into a partnership or support other venues with recognition at a higher level than that to be granted to KFN."

67. Each party granted the other a limited license to use its marks in promotion. The CFDA Agreement also provided that Mr. Kolb would join the "N4XT Advisory Board."

68. In exchange, KFN Events committed to annual "Qualified Sponsorship Payment[s]" to CFDA: $25,000 within 30 days of signing; $50,000 on January 1, 2025; $75,000 on January 1, 2026; and $100,000 on January 1, 2027, with the right to extend the relationship through additional payments of $125,000 for each of 2028 and 2029.

69. The CFDA Agreement also gave KFN Events the option to buy a table at the CFDA Awards at a discounted rate of $60,000 for 2024. KF Fashion funded these commitments as part of the KF Capital.

70. In total, KF Fashion and KFN Events paid substantial sums to CFDA under and in connection with the CFDA Agreement.

71. The purpose of the CFDA Agreement, understood by all parties to the venture, was to give KFN Events and its platform recognition, legitimacy, and visibility with designers, sponsors, and media, so that the KFN Events brand and its programming, including what became The Venue Collective, would grow in stature and value over multiple seasons.

72. CFDA and KFN Events publicly launched the relationship in February 2025, when Mr. Kolb appeared with Izemrane at a CFDA x KFN kickoff event and CFDA publicly stated its commitment to supporting initiatives that bring fresh perspectives to fashion week and empower designers to succeed.

73. Public coverage of the September 2025 season reported that the team at KFN worked with CFDA to advance that mission with The Venue Collective.

74. Relying on these commitments, KF Fashion made a very significant investment in furtherance of the joint venture. In total, KF Fashion invested in excess of $4,000,000 in KFN Events and the fashion events N4XT was charged with producing (the "KF Capital").

75. The KF Capital consisted of (a) funds transferred by KF Fashion to KFN Events and (b) payments made by KF Fashion directly to third-party vendors, contractors, and venues at the instruction of N4XT, acting through Izemrane and Abell in their capacities as Managing Members of KFN Events and as the venture's designated producer.

76. In late August and early September 2025, in anticipation of New York Fashion Week for the Fall of 2025, N4XT represented to KF Fashion that sponsors had been secured and that approximately $4,000,000 in cash sponsorship revenue would be received after the September 2025 event.

77. In reliance on those representations, KF Fashion invested an additional $1,000,000.

78. No such sponsorship revenue was ever remitted to KF Fashion.

79. The KF Capital was advanced to and for the account of KFN Events for use in the venture's approved budgets.

80. Once advanced, the KF Capital, and the contracts, relationships, intellectual property, and other assets it purchased, were property of KFN Events, which N4XT and its designated Managing Members held and controlled as fiduciaries of the company.

81. Separately, under § 7 of the Framework Agreement, event and sponsorship revenue was payable directly to KF Fashion, and under § 10, KF Fashion was entitled to repayment of all of its investments plus 8% interest before any distribution to N4XT.

**D. The Venue Collective**

82. With the KF Capital, KFN Events launched a program called "The Venue Collective," a network of contracted New York venues offered to designers at no cost.

83. KFN Events publicly launched The Venue Collective on July 24, 2025, as its "Phase 1" initiative—the first step of a five-phase plan to restructure how designers show in New York. As announced, The Venue Collective replaced a single centralized venue with a network of fully contracted, design-forward venues with built-in operational support, offered to New York-based designers at no venue fee. It featured three formats—Runway, Multi-Designer (Boutique) Venue, and Showrooms—with a fourth, the Editor Salon Series, slated to launch in 2026.

84. Under the Venue Collective model, KFN Events paid the venue rental fee and a rider of essential production infrastructure for each designer's backstage and operational needs. As Leslie Russo, the architect of the initiative, publicly confirmed, "the pilot season is funded by the strategic investment from KFN." That investment was the KF Capital.

85. For the September 2025 pilot season, more than 30 designers used The Venue Collective, organized within a compact Manhattan perimeter and supported by a showroom hub at High Line Nine that was opened as a KFN Events space.

86. The Venue Collective—its venue network, its no-fee financial model for designers, its integrated backstage infrastructure, its campus-style geographic footprint, its multi-format structure, and its multi-season expansion roadmap—was conceived, developed, and funded within KFN Events and belongs to KFN Events.

87. Under § 8 of the Framework Agreement, it is intellectual property "created, developed, or conceived as a result of or in connection with the formation and operations" of the venture's events and is "solely owned by KFN Events."

88. The expansion of The Venue Collective into the 2026 seasons and beyond was KFN Events' business opportunity.

89. KFN Events—not N4XT—was the contracting party with the participating designers.

90. During the September 2025 season, KFN Events entered into participation agreements with, among others, Altuzarra LLC (Woolworth Building; $70,000 venue rental fee), Sergio Hudson Collections, LLC (Spring Studios), 1406 Inc. d/b/a Fforme, Zankov and AKNVAS (Studio 525), Daniella Kallmeyer, LLC (Crane Club; $30,000 venue fee plus a $25,000 production contribution), and Opus Duces, Inc. d/b/a Public School NY ($60,000 flat contribution). Each agreement reserved to KFN Events the exclusive right to sponsorship and 100% of sponsorship revenue.

**E. N4XT Diverts the Venture to Itself**

91. N4XT treated the KF Capital as its own.

92. On July 28, 2025, without KF Fashion's knowledge or consent, N4XT filed six intent-to-use applications in its own name—not KFN Events'—for KFN EVENTS, KFN (Ser. No. 99307627), NYFW BY KFN (Ser. No. 99307614), NYFW THE VENUE COLLECTIVE (Ser. No. 99307634), THE VENUE COLLECTIVE AT NYFW (Ser. No. 99307637), and THE VENUE

COLLECTIVE (Ser. No. 99307631) (the "KFN Applications"), covering the very services KFN Events was formed to provide.

93. Meanwhile, Izemrane and Abell used the KF Capital, and the designer, venue, and sponsor relationships it purchased, to build N4XT.

94. Upon information and belief, N4XT: (a) promoted its own name and brand, rather than KFN Events', in connection with KF-funded events; (b) solicited and contracted with sponsors for its own account, rather than remitting sponsorship revenue to KF Fashion as § 7 required; (c) spent KF Capital on N4XT's own overhead and initiatives outside the approved budgets; and (d) failed to account for KF Capital or remit event revenue.

95. The KF Capital also bought the venture valuable sponsor relationships.

96. On or about August 18, 2025, KFN Events entered into an Event Promotion/Sponsorship Agreement with Nestlé Premium Waters, a division of Nestlé USA, Inc. ("Nestlé"), under which Nestlé agreed to sponsor KFN Events' fashion programming for three consecutive seasons—September 2025, February 2026, and September 2026 (the "Nestlé Agreement").

97. Nestlé paid KFN Events a $30,000 fee for the September 2025 season and agreed to pay activation fees of $85,000 for the February 2026 season and $85,000 for the September 2026 season.

98. The Nestlé Agreement prohibited assignment, in whole or in part, except by a separate writing signed by all parties.

99. N4XT was already selling New York Fashion Week as its own property while the venture was operating.

100. On September 9, 2025, Viral Nation announced that it had been "named the exclusive social partner for N4XT's flagship fashion events, including New York Fashion Week (NYFW), LA Fashion Week (LAFW), and BEAUTYDAYS."

101. Upon information and belief, N4XT granted that exclusivity for the September 2025 season, which KF Capital funded, without any license from IMG and without accounting to KF Fashion.

102. When KF Fashion discovered the KFN Applications, N4XT was compelled to execute six Assignments of Trademark dated October 2, 2025, transferring each KFN Application and its goodwill to KFN Events.

103. N4XT's counsel, Mr. Krasner—who remained attorney of record—never recorded the assignments, and USPTO correspondence concerning the applications continued to go to him rather than to KFN Events.

104. On January 13, 2026, the USPTO refused NYFW BY KFN, NYFW THE VENUE COLLECTIVE, and THE VENUE COLLECTIVE AT NYFW under Section 2(d), citing IMG's NYFW registrations—the same registrations 2294 now owns.

**F. The Doppelganger "NYFW Collections"**

105. On or about October 11, 2025, N4XT purported to terminate or withdraw from the joint venture.

106. At the time of N4XT's purported withdrawal, KFN Events had built a substantial sponsorship business.

107. KFN Events had booked sponsorships totaling approximately $640,000 from Google Cloud, Vivienne Sabo, Nestlé, and Unilever/TRESemmé, of which approximately $170,000 was scheduled for the February 2026 and September 2026 seasons.

108. Beyond its booked sponsors, KFN Events maintained a sponsorship pipeline of more than one hundred prospective sponsors. That pipeline included approximately sixteen prospects with which proposals had been sent or negotiations were underway—among them American Express, BMW, Cadillac, Chase, Mastercard, PayPal, and Stellantis/Jeep—with estimated gross revenue potential of approximately $6 million to $11.6 million for the 2026 and 2027 seasons, many of which were targeted specifically for 2026.

109. The pipeline also included early-stage opportunities, including SAP and Meta, that Izemrane personally led on behalf of KFN Events.

110. N4XT did not return the KF Capital, did not account for it, and did not relinquish the assets it had produced.

111. Both before and after N4XT's purported withdrawal, KF Fashion and KFN Events made repeated requests that N4XT account for the KF Capital, both generally and specifically as to sponsorships, sponsor pipelines, and sponsorship revenue. N4XT provided no response and, to date, has produced no records or support showing how the KF Capital was spent.

112. Instead, N4XT rebranded "The Venue Collective" as "NYFW Collections" and continued to operate it for its own benefit with the same designers—including Sergio Hudson, Altuzarra, Fforme, Public School, Zankov, AKNVAS, and Kallmeyer—and the same venues that KFN Events had contracted and KF Fashion had paid for.

113. N4XT concealed its plans while it remained a member of KFN Events and while Izemrane and Abell remained its Managing Members.

114. Upon information and belief, both before and after its purported withdrawal, N4XT, acting through Izemrane and Abell, used KFN Events' confidential plans, venue contracts,

designer relationships, and expansion roadmap to prepare a continuation of The Venue Collective for N4XT alone.

115. N4XT never disclosed that plan to KFN Events and never offered KFN Events the opportunity.

116. On January 8, 2026, N4XT registered a new domain called: nyfwcollections.com as set forth below.

**Domain Information**

| | |
|---|---|
| Name | NYFWCOLLECTIONS.COM |
| Registry Domain ID | 3055479774_DOMAIN_COM-VRSN |
| Registered On | 2026-01-08T18:35:25Z |
| Expires On | 2027-01-08T18:35:25Z |
| Updated On | 2026-01-11T23:45:23Z |
| Domain Status | client transfer prohibited |
| Name Servers | NS12.WIXDNS.NET<br>NS13.WIXDNS.NET |

117. On January 12, 2026, Women's Wear Daily reported that "N4XT Experiences, which produced its first season of The Venue Collective as a partner in KFN last September, has a new name, NYFW Collections, and a slate of fully contracted venues across New York City." *See,* **Exhibit "5".**

118. Izemrane described NYFW Collections as "the natural evolution of the work that began with our pilot season"—the KFN Events pilot season that the KF Capital funded—and stated that the platform "is designed to reduce barriers, provide consistent financial, operational and creative resources, and create continuity season after season."

119. NYFW Collections is The Venue Collective under a new name.

120. It offers the same network of fully contracted venues; the same no-venue-fee model with production support; the same "multiple presentation formats, including runway,

multidesigner venue, and showrooms"; the same concentrated geographic strategy, "below 42nd Street, with a campus of activity between Hudson Yards and the Meatpacking District"; the same returning designers—Kallmeyer, Sergio Hudson, Altuzarra, Fforme, Public School, Zankov, and AKNVAS; and the same venues, including High Line Nine, which had been opened as a KFN Events showroom. N4XT has added other venues, such as the New York Public Library and Storied (formerly Chelsea Factory).

121. It used the exact same images and imagery as reflected in a side-by-side comparison below.




122. N4XT produced the February 2026 season under the NYFW Collections banner for its own account.

123. In or about January 2026, in advance of that season and while the IMG Demand remained outstanding, N4XT also revised its website to describe itself as a New York Fashion Week provider and to use NYFW and NEW YORK FASHION WEEK as source identifiers. Neither KF Fashion nor IMG authorized that conduct.

124. It has since used NYFW Collections as the foundation for the SAP partnership, the Retail Innovation Lab, the nyfwcollections.com website, and the NY.FW COLLECTIONS application described below. N4XT never obtained the consent of KFN Events or KF Fashion, never paid KFN Events the license fee the Framework Agreement requires for use of the venture's intellectual property, and has never accounted for any revenue derived from NYFW Collections.

125. On February 1, 2026, counsel for KF Fashion and KFN Events wrote to N4XT and its Board of Directors, demanding that N4XT acknowledge KFN Events' ownership of The Venue Collective and related intellectual property, transfer control of the February 2026 shows to KFN Events, assign to KFN Events any new trademark applications, cease use, and sequester the related assets and proceeds. *See,* **Exhibit "6".**

126. N4XT did not comply.

**G. N4XT Interferes with the Nestlé and CFDA Relationships**

127. After N4XT purported to withdraw from the venture, and without the knowledge or authorization of KF Fashion or KFN Events, N4XT set out to take the Nestlé relationship for itself.

128. Izemrane corresponded directly with Nestlé's representative, Fabrizio Babino, and told Nestlé that N4XT was not affiliated with KFN Events, was not acquiring KFN Events, and that any future participation by Nestlé would require a new agreement directly with N4XT.

129. At the same time, on December 9, 2025, Patrick Connors—who had served as Nestlé's point of contact for KFN Events since the outset of the engagement—abruptly began communicating with Nestlé in an N4XT capacity, never identified a replacement KFN Events representative, and repeatedly told Nestlé that it would need to negotiate directly with N4XT going forward.

130. No assignment was ever requested of or consented to by Nestlé, and none was ever authorized by KFN Events.

131. N4XT's solicitation had its intended effect.

132. On December 17, 2025, Nestlé's counsel issued a Notice of Breach and Termination to KFN Events, stating that it had learned through recent correspondence between Fabrizio Babino and Imad Izemrane that KFN Events had assigned or attempted to transfer its obligations under the Agreement to N4XT Experiences Inc., that Nestlé did not consent, and that it considered the attempted assignment a material breach. *See,* **Exhibit "7".**

133. To the extent Nestlé also cited KFN Events' inability to perform certain deliverables, upon information and belief that inability resulted from N4XT's withdrawal from the venture and its diversion of the personnel, relationships, and KF Capital on which KFN Events' performance depended.

134. Nestlé thereafter refused to continue working with KFN Events, and the Nestlé Agreement was terminated in or about February 2026, before the February 2026 and September 2026 activations could occur.

135. The loss of Nestlé was not limited to the $170,000 in remaining activation fees.

136. Nestlé is among the largest consumer-products companies in the world, and its multi-season commitment to KFN Events was the type of anchor sponsorship that establishes an event platform's credibility with other sponsors and designers.

137. Had N4XT not interfered, upon information and belief, the Nestlé relationship would have continued beyond the initial Term, through renewals and expanded sponsorships across future New York Fashion Week seasons and related events, and would have been worth substantially more over time, while also attracting additional sponsorship revenue to KFN Events.

138. N4XT knew the value of that relationship, which KF Capital had paid to develop, and sought to capture it for itself.

139. N4XT's diversion of the venture also destroyed the value of the CFDA Agreement.

140. The recognition and visibility that KF Fashion paid for were meant to benefit KFN Events and its platform. After N4XT purported to withdraw and rebranded The Venue Collective as NYFW Collections, the designers, venues, and programming that the CFDA relationship was meant to elevate were presented to the industry as N4XT's own.

141. Upon information and belief, during and after the September 2025 season, N4XT also told prospective investors and partners that N4XT, not KFN Events, held the CFDA's sanction.

142. Upon information and belief, Izemrane and Abell, who had managed the CFDA relationship as Managing Members of KFN Events and with whom Mr. Kolb was affiliated through the N4XT Advisory Board, then induced CFDA to terminate or abandon the CFDA Agreement with KFN Events and to align with N4XT instead.

143. Neither KFN Events nor KF Fashion consented to N4XT's communications with CFDA on these subjects, which N4XT made for its own benefit and against the interests of the company whose relationship it was entrusted to manage.

144. As a result, the sponsorship payments and other sums that KF Fashion and KFN Events paid under and in support of the CFDA Agreement were wasted.

145. KFN Events lost the benefit of the remaining term through 2027 and its extension rights for 2028 and 2029, and N4XT captured the goodwill and visibility that the CFDA relationship had generated.

### H. N4XT's Current Infringement

146. Since the purported termination, N4XT has used, and continues to use, NYFW, NEW YORK FASHION WEEK, NY.FW, and confusingly similar designations (the "Infringing Marks") as the dominant source identifiers for its fashion-event, sponsorship, retail, and digital services, including through:

- an "NYFW Collections" platform and the website nyfwcollections.com, offering collection shopping, showrooms, and runway services connected to New York Fashion Week;
- the domain nyfwvenuecollective.com and the designation NYFW THE VENUE COLLECTIVE;
- public statements, including on n4xtexperiences.com and in press materials, that N4XT "owns and operates New York Fashion Week";
- a "multi-season partnership," announced February 5, 2026, under which SAP became the "official technology and co-innovation partner" behind "New York Fashion Week" and N4XT's "NYFW Collections platform," including a "Retail Innovation Lab by NYFW Collections and SAP" and NYFW-branded activations in February and September 2026;
- the FW App described below, which N4XT promotes as the "official" digital platform for New York Fashion Week and which displays "New York Fashion Week Collections" and "NYFWLive.fw"; and
- pending applications to register NY.FW COLLECTIONS (Ser. No. 99584032), NY.FWLIVE (Ser. No. 99581528), and .FW COLLECTIVE-formative marks.

147. On May 6, 2026, the USPTO refused NY.FW COLLECTIONS and NY.FWLIVE under Section 2(d), finding that "NY.FW" and "NYFW" create a highly similar commercial impression and that N4XT's event-planning, promotion, and sponsorship services are closely related to the services covered by the NYFW Marks. N4XT continued its use.

148. Rather than respond to or abandon those applications, N4XT filed a three-month extension of time that pushed its response deadline to November 6, 2026, after the September 2026 New York Fashion Week season.

149. N4XT then launched its September 2026 New York Fashion Week programming under NYFW-formative branding, knowing the USPTO had already found its marks likely to cause

confusion with the NYFW Marks, and put off any ruling on its applications until the season was over.

150. N4XT's websites are the hub for its infringing conduct.

151. N4XT operates nyfwcollections.com, whose very domain name is built on the NYFW mark.




152. The site identifies itself in its page titles as "NYFW Collections," brands its season pages as "NYFW February 2026 | NYFW Collections," and announces, as its headline, "INTRODUCING the LAUNCH COLLECTIONS of New York Fashion Week," followed by the dates of the February 2026 season.




153. The website nyfwcollections.com does not merely describe events that occur during New York Fashion Week in any type of historical or reporting capacity.

154. It presents designer collections—including those of AKNVAS, Altuzarra, AREA, and FFORME—as “Collections of New York Fashion Week,” pairs each designer profile with “SHOP” links that drive consumers to purchase the designers’ goods, and markets the venues, showrooms, and production services N4XT sells to designers and sponsors.

155. The NYFW Marks thus appear on the site in direct connection with the very fashion-show, retail, and sponsorship services for which the NYFW Marks are registered and for which N4XT now attempts to profit from their goodwill.

156. N4XT’s corporate website, n4xtexperiences.com, uses the NYFW name on its landing page and features prominent links to “NYFW Collections,” directing visitors from N4XT’s own brand to its NYFW-branded platform. N4XT also promotes, under the heading “The New

York Fashion Week Collections logo," a logo for its platform that incorporates the words NEW YORK FASHION WEEK, which N4XT displays across its venues and fashion programming.




157. N4XT's online properties also falsely claim ownership of the primary fashion event itself. N4XT's company profile, linked to n4xtexperiences.com, states that "N4XT Experiences owns and operates New York Fashion Week and LA Fashion Week" and describes N4XT as "Owners and operators of NYFW and LAFW." Its NYFW Collections profile, linked to nyfwcollections.com, describes NYFW Collections as "[t]he official platform to experience New York Fashion Week" and "the premier operating and production platform of New York Fashion Week." Another N4XT-affiliated site describes N4XT as "the premier producer of New York Fashion Week and the owner of NYFW Collections." Each statement is false: N4XT does not own, operate, nor have any license to New York Fashion Week or the NYFW Marks.

158. N4XT's services are identical or closely related to those covered by the NYFW Marks; they are offered in the same city, during the same weeks, through the same channels, to the same designers, sponsors, media, and consumers. N4XT's use of "NYFW" is not descriptive nor nominative: N4XT uses it as a brand, in the name of its platform, its domains, and its applied-for

marks, and it falsely claims to own and operate the event that has been promoted for over a decade under the well-known NYFW and NEW YORK FASHION WEEK trademarks.

159. N4XT's use is likely to cause, and upon information and belief has caused, confusion among designers, sponsors, media, and consumers as to the source, sponsorship, and affiliation of N4XT's services, including the false impression that N4XT is the owner, official producer or licensee to offer NYFW and NEW YORK FASHION WEEK branded events and related goods and services.

160. N4XT's misrepresentations have in fact confused the trade press.

161. On February 11, 2026, 360 Magazine reported that "N4XT Experiences, a live events company which owns both New York Fashion Week (NYFW) and LA Fashion Week," was partnering with SAP.

162. FashionUnited described N4XT as "one of the organisations behind New York Fashion Week (NYFW)." Neither statement is true, and each repeats to the industry the false impression N4XT set out to create.

**I. 2294 Acquires the NYFW Portfolio; Signet Becomes Its Exclusive Licensee**

163. By an Asset and Trademark Purchase Agreement effective July 16, 2026 (the "APA"), IMG sold, assigned, and transferred to 2294 all of its right, title, and interest in the NYFW Marks and related assets, together with the goodwill symbolized by them.

164. IMG executed a separate Trademark Assignment in favor of 2294.

165. The acquisition was reported publicly, including by Women's Wear Daily on August 3, 2026. *See,* **Exhibit "8".**

166. Under the APA, IMG also transferred to 2294 all actions, claims, rights of recovery, and remedies relating to the matters described in Schedule 2.3 of the APA (the "Specified Transferred Actions"), which expressly include IMG's claims against N4XT arising from N4XT's

NYFW-formative branding and applications. 2294 therefore holds both the NYFW Marks and IMG's accrued claims against N4XT for infringement predating the closing.

167. The assignment has been recorded with the USPTO. The assignment was effective upon execution, and 2294's right to enforce the NYFW Marks does not depend on recordation. 15 U.S.C. § 1060(a).

168. 2294 has granted Signet an exclusive license to use, sublicense, and enforce the NYFW Marks in connection with fashion shows, events, sponsorships, and media productions (the "License"). Signet operates the NYFW platform, including the forthcoming February 2027 NYFW event season, and has a direct commercial interest in the NYFW Marks that Defendants' conduct injures.

**J. N4XT Escalates Its Infringement After 2294's Acquisition**

169. N4XT's infringement reached its most brazen point after 2294 acquired the NYFW Marks.

170. Building on the "multi-season partnership" announced on February 5, 2026, under which SAP was presented as the "official technology and co-innovation partner" behind "New York Fashion Week" and the "Retail Innovation Lab by NYFW Collections and SAP," N4XT and SAP planned a further NYFW-branded activation for the September 2026 season: an invitation-only "SAP Customer Experience Fashion Soirée" in New York City on September 14, 2026 (the "SAP Soirée") as set forth below:




171. The invitation to the SAP Soirée did not merely refer to New York Fashion Week in words. It reproduced the official NYFW: THE SHOWS logo itself—the stylized, stacked "NY" over "FW" lockup above the words "NEW YORK FASHION WEEK THE SHOWS"—the same logo IMG had used for years to identify the official event and that is embodied in the NYFW Marks.

172. The invitation billed the event as "FASHION SOIRÉE @" followed by that logo, placed N4XT's own circular logo immediately beside it, and paired both with SAP's logo, under the legend "PRESENTED BY SAP PARTNERS" and the statement "AN EXCLUSIVE SOIRÉE BY INVITE ONLY. FOR SELECT BRANDS, INFLUENCERS, PARTNERS, DESIGNERS, AND MODELS."

173. The invitation's use of the NYFW Marks was blatant, intentional, and willful.

174. No descriptive or nominative purpose required reproducing the official logo of the event; the only function of that logo is to tell the audience that the event is part of, sponsored by, or affiliated with official New York Fashion Week brand.

175. By placing N4XT's logo side by side with the NYFW: THE SHOWS logo, the invitation told the very brands, influencers, designers, models, and sponsors who make up New York Fashion Week's core audience that N4XT and its partner SAP were the official producer of, or authorized partner in, New York Fashion Week. They were neither.

176. N4XT did so after the IMG Demand, after the USPTO had repeatedly refused its NYFW-formative applications as likely to cause confusion with the NYFW Marks, and after 2294's acquisition of the NYFW Marks had been publicly reported on August 3, 2026.

177. N4XT went further and appropriated the imagery and trade dress associated with 2294's acquisition. After Women's Wear Daily reported on August 3, 2026 that the New York Fashion Week and NYFW trademarks had been acquired from WME, N4XT began prominently using in its NYFW-branded promotions the same runway imagery—models on dramatically lit catwalks—that featured in that coverage, further associating its services with the official event and the goodwill 2294 had just acquired.

178. The SAP Soirée invitation, together with N4XT's and SAP's continuing NYFW-branded activations, prompted Plaintiffs to act.

179. On September 2, 2026, Plaintiffs' counsel sent written demands to SAP. *See,* **Exhibit "9".**

180. The demand to SAP specifically identified the "Retail Innovation Lab by NYFW Collections and SAP," SAP's NYFW-branded activations in February 2026 and planned for September 2026, and the SAP Soirée invitation's direct and prominent use of the NYFW: THE SHOWS logo and New York Fashion Week branding.

181. On September 2, 2026, Plaintiffs' counsel also sent N4XT a written demand to cease use of the NYFW Marks, to issue corrective notices, to account for profits, and to abandon its NYFW-formative applications (the "2294 Demand"). *See,* **Exhibit "10".**

182. N4XT has not changed course since receiving the 2294 Demand.

183. On September 9, 2026—one week after the 2294 Demand—N4XT issued a press release announcing a new "Retail Innovation Lab by NYFW Collections and SAP" for "September's New York Fashion Week" and describing itself as "the owner and operator of LA Fashion Week and NYFW Collections." Upon information and belief, as of the filing of this Complaint, nyfwcollections.com and n4xtexperiences.com continue to display the Infringing Marks as described above.

184. Issued on the eve of the September 2026 New York Fashion Week season, after the USPTO's refusals and one week after the 2294 Demand, the September 9, 2026 announcement is yet another example of egregiously willful conduct.

185. The September 2026 "Retail Innovation Lab by NYFW Collections and SAP" was a full retail store at 475 Broome Street in SoHo, open to the public from September 11 through September 30, 2026, selling RE/DONE's first collection designed with Kaia Gerber under the NYFW Collections banner. SAP's own newsroom promoted the store on September 10, 2026, describing N4XT as the company "which operates NYFW Collections." N4XT thus used the NYFW Marks to sell apparel to consumers for three weeks—the very retail services covered by Registration No. 6,317,961—after receiving the 2294 Demand.

186. After the store closed, N4XT promoted it on its company profile as "Retail Innovation Lab 2.0," stating that "NYFW Collections brought together RE/DONE and SAP" and

tagging the post #NYFWCollections and #NewYorkFashionWeek—on the same profile that proclaims N4XT the "[o]wners and operators of NYFW."

187. On September 17, 2026, N4XT, through Mr. Krasner, rejected the 2294 Demand and stated that N4XT "will not cease its activities, issue corrective communications or advertising, . . . provide an accounting, or abandon its pending applications." *See,* **Exhibit "11".**

188. Defendants' infringement is therefore deliberate and willful.

189. It has continued with actual knowledge of the NYFW Marks since at least the IMG Demand, through repeated USPTO refusals, and after the 2294 Demand.

190. Izemrane and Abell are the moving, active, conscious forces behind N4XT's infringement. They personally authorized and directed the adoption of the Infringing Marks, the filing of the applications, the SAP partnership, the public claims of ownership of New York Fashion Week, and the refusal to cease.

191. Mr. Krasner is a fact witness to each stage of this chronology: he advised N4XT on the NYFW Marks in July 2024; prosecuted the N4XT Experience Applications, the KFN Applications, and the NY.FW applications; received the USPTO's refusals; remained attorney of record after N4XT assigned the KFN Applications to KFN Events and did not record those assignments; and authored N4XT's September 17, 2026 refusal to cease.

### K. The Joint Venture's Fruits: The Culture Shop Claim and N4XT's Other Opportunities

192. On September 9, 2026, N4XT sued Culture Shop LLC ("TCS"), whose chief executive is Leslie Russo, in the Supreme Court of the State of New York, New York County, Index No. 655120/2026 (the "Culture Shop Action"). N4XT seeks a 20% "Referral Fee" of $306,400 on $1,532,000 in revenue TCS allegedly received from "Home of Football," plus 20%

of revenue from other business N4XT claims it referred to TCS, under a Strategic Partnership Agreement dated May 16, 2025.

193. The Strategic Partnership Agreement was signed on May 16, 2025, while the KFN Events joint venture was operating and while Izemrane was a Managing Member of KFN Events. Ms. Russo was presented to KF Fashion in N4XT's own pitch materials as KFN Events' "Lead Architect NYFW."

194. The relationships, introductions, and meetings on which N4XT's referral claim rests were developed in the course of, and with resources supplied to, the KFN Events joint venture. N4XT itself alleges that its referral rights arise in part because "N4XT provided funding for clients and/or customer runway shows for which TCS produced the runway shows"; upon information and belief, that funding was KF Capital.

195. The Culture Shop claim is not an isolated example. Each of the three most valuable commercial relationships N4XT has exploited or sought to exploit under the NYFW banner—Nestlé, SAP, and the "Home of Football" engagement—was born out of the KFN Events joint venture.

196. Nestlé contracted with KFN Events itself, as "Organizer," for three NYFW seasons, and N4XT attempted to take that relationship for itself only after purporting to withdraw from the venture.

197. Upon information and belief, the SAP relationship was cultivated during the joint venture, through the Venue Collective platform, the designer roster, and the sponsor outreach that KF Capital funded; SAP's "multi-season partnership" with N4XT was announced on February 5, 2026, less than four months after N4XT's purported withdrawal, was built around "NYFW Collections"—the rebranded Venue Collective—and featured a "Retail Innovation Lab" co-

developed with Public School, a designer with which KFN Events had contracted and to which KFN Events paid a $60,000 contribution.

198. And, upon information and belief, the "Home of Football" engagement on which N4XT now sues TCS arose from relationships, introductions, and meetings developed while Izemrane was a Managing Member of KFN Events and Ms. Russo was presented as KFN Events' "Lead Architect NYFW." None of these relationships would exist but for the joint venture and the KF Capital that financed it.

199. Accordingly, any right to payment N4XT may have against TCS or Ms. Russo, the Nestlé and SAP relationships and all revenue derived from them, and every other business opportunity N4XT has developed under the NYFW banner since 2024, is a joint venture opportunity belonging to KFN Events and KF Fashion, or the product of KF Capital and the NYFW Marks, and is held by N4XT in constructive trust. N4XT has no independent entitlement to those proceeds.

**L. The FW App.**

200. Recently, N4XT developed a mobile application branded ".FW" (the "FW App").



201. N4XT's materials describe the FW App as "the official digital platform for New York Fashion Week and beyond."

202. The FW App is the ".FW digital platform" that N4XT and SAP announced on February 5, 2026 as a means to "unify designers, buyers, and consumers within a single ecosystem" for New York Fashion Week and N4XT's NYFW Collections platform.

203. Along the bottom of its interface, the FW App displays a persistent string of designations, including "New York Fashion Week Collections" and "NYFWLive.fw," which identify the programming, events, and services offered through the app.




204. "NYFWLive.fw" incorporates the NYFW mark in its entirety and is the same NY.FWLIVE designation the USPTO refused on May 6, 2026 as likely to be confused with the NYFW Marks. "New York Fashion Week Collections" incorporates the NEW YORK FASHION WEEK mark in its entirety.

205. Through the FW App, N4XT offers, upon information and belief, show schedules, event access and ticketing, designer and showroom content, and shopping features—services identical or closely related to the fashion-show entertainment, online ticket agency, and online retail services covered by Registration Nos. 4,870,711, 5,206,534, 4,966,630, and 6,317,961—to the same designers, sponsors, media, and consumers that Signet serves under the NYFW Marks.

206. N4XT's statement that the FW App is the "official" digital platform for New York Fashion Week is literally false.

207. N4XT holds no license to the NYFW Marks from 2294, IMG, or any predecessor; Signet is the only party authorized to use the NYFW Marks.

208. Furthermore, N4XT does **not** organize the official New York Fashion Week calendar.

209. The statement is material because sponsors, designers, and consumers choose a fashion-week platform based on whether it is the official one.

210. The FW App was not N4XT's idea.

211. A real-time, AI-powered digital platform for navigating New York Fashion Week—"The Only Way to Navigate Fashion Week"—was a planned phase of the KFN Events business plan funded by KF Capital, and the KFN Events initiative publicly contemplated an AI-driven digital platform for attendees.

212. Upon information and belief, N4XT developed the FW App using plans, relationships (including SAP), and resources of the KFN Events joint venture, and the FW App is a KFN Events business opportunity.

213. N4XT launched the FW App after receiving the 2294 Demand, after the USPTO's Section 2(d) refusals, and after its September 17, 2026 refusal to cease.

214. Izemrane and Abell, upon information and belief, personally approved the FW App's name, "official" positioning, and NYFW-formative designations.

215. The FW App is likely to cause, and upon information and belief has caused, users, designers, and sponsors to believe that it is the official New York Fashion Week platform or is sponsored, approved, or licensed by the owner of the NYFW Marks, diverting users and business from Signet in advance of the February 2027 season.

**M. N4XT and Izemrane Own Absolutely Nothing**

216. N4XT and Izemrane own nothing that bears the name New York Fashion Week.

217. They hold no registration for any NYFW-formative mark, no license from 2294, IMG, WME, Fashion Week, Inc., or any other owner of the NYFW Marks, and no right of any kind to hold themselves out as the owner or operator of New York Fashion Week.

218. Yet holding themselves out as exactly that has been the centerpiece of their marketing, their sponsor pitches, and their solicitation of capital.

219. Recently, Izemrane, on behalf of N4XT, through N4XT's Instagram account sent the following message to a potential investor and/or business partner:



220. Upon information and belief, the message was sent to induce investment in N4XT and its NYFW-branded platforms.

221. The statement "Nice to meet you. We own and operate New York Fashion Week" was false when made, and Izemrane knew it was false.

222. Neither N4XT nor Izemrane owns or operates New York Fashion Week.

223. The NYFW Marks were then owned by IMG and are now owned by 2294.

224. Signet is their only authorized licensee and the Council of Fashion Designers of America ("CFDA")—not N4XT—publicly describes itself as "the official organizer of NYFW and owner of the Fashion Calendar – including the Official NYFW Schedule."

225. The message to the prospective investor is part of a fabricated narrative that N4XT and Izemrane have repeated across every channel they control, including the N4XT and NYFW Collections profiles described above; Izemrane's own LinkedIn profile, which describes him as "Owner and producer of live events. New York Fashion Week Collections - LA Fashion Week"; and N4XT's September 9, 2026 press release, which describes N4XT as "the owner and operator of LA Fashion Week and NYFW Collections."

226. The falsehood has been repeated to the market exactly as N4XT intended. In addition to the 360 Magazine and FashionUnited reports described above, SAPinsider reported, upon information and belief based on N4XT's own statements and press materials, that N4XT "took over production of New York Fashion Week from IMG in 2025" and owns "both New York Fashion Week Collections and LA Fashion Week." N4XT never corrected any of these reports.

227. Izemrane's own words expose the fabrication.

228. After 2294's acquisition of the NYFW Marks was publicly reported, Izemrane told Women's Wear Daily that "New York Fashion Week by itself is not ownable." (see below-referenced quote taken from WWD Article of August 3, 2026)[1]

> He said his NYFW Collections shouldn't be impacted with a change in ownership of the trademarks. He said the name, New York Fashion Week, is not ownable. "New York Fashion Week by itself is not ownable, it's descriptive versus distinct trademark. It's a big difference," he said.

229. A person who believes New York Fashion Week cannot be owned cannot truthfully tell an investor that his company owns it.

230. And as alleged above, N4XT's own counsel acknowledged in 2024 that IMG owned the NYFW registrations, and N4XT's investor deck pitched the opportunity to "assume control of NYFW without incurring any acquisition or licensing costs."

231. The USPTO record confirms that N4XT owns nothing.

232. Every NYFW-formative application N4XT has filed has been refused, and, upon information and belief, none has been allowed or registered: (a) the N4XT Experience Applications were refused as likely to be confused with IMG's registered NYFW Marks; (b) NYFW BY KFN, NYFW THE VENUE COLLECTIVE, and THE VENUE COLLECTIVE AT NYFW were refused under Section 2(d) on January 13, 2026; and (c) NY.FW COLLECTIONS and NY.FWLIVE were refused under Section 2(d) on May 6, 2026.

233. And, as alleged above, N4XT assigned the KFN Applications to KFN Events on October 2, 2025, so N4XT does not even own those refused applications.

[1] WME Sells New York Fashion Week, NYFW: The Shows IP, Trademarks, Digital Assets to Signet Fashion (Last visited, Nov. 14, 2026).

234. A pending application confers no right to use a mark, and a refused application is evidence only of the absence of one.

235. The CFDA Agreement conferred no rights in the NYFW Marks, which belonged to IMG.

236. Ownership of New York Fashion Week is the single most material fact N4XT could represent to an investor, sponsor, or designer.

237. Upon information and belief, N4XT and Izemrane made these misrepresentations to obtain capital, sponsorships (including from SAP), and designer participation that they could not have obtained had they told the truth: that N4XT is an event producer with no registrations, no license, a string of refused applications, and no rights in New York Fashion Week at all.

### N. Harm to Plaintiffs

238. Defendants' conduct has caused and, unless enjoined, will continue to cause irreparable harm to Plaintiffs, including loss of control over the reputation and goodwill of the NYFW Marks, diversion of sponsors and designers in advance of the February 2027 NYFW season, and confusion in the marketplace as to who produces New York Fashion Week. Plaintiffs are entitled to a rebuttable presumption of irreparable harm. 15 U.S.C. § 1116(a). Plaintiffs have no adequate remedy at law.

## CLAIMS FOR RELIEF

### COUNT I
### INFRINGEMENT OF REGISTERED TRADEMARKS, 15 U.S.C. § 1114(1)

*(By 2294 and Signet against all Defendants)*

239. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

240. 2294 owns the registered NYFW Marks and the related intellectual property.

241. Without consent, Defendants have used in commerce reproductions, copies, and colorable imitations of the registered NYFW Marks in connection with the sale, rendering, offering, distribution, and advertising of goods and services, in a manner likely to cause confusion, mistake, or deception.

242. Defendants' infringement has been knowing, intentional, and willful.

243. In particular, and without limitation, the correspondence purportedly dated July 14, 2024 from Bennett David Krasner, Esq. ("Krasner letter") to N4XT purports to "opine" on the validity, *vel non*, of the IMG marks.

244. The Krasner letter is facially unreliable, and no reasonable person could have relied on it in good faith as authority to use the NYFW Marks.

245. Among other things, the letter (a) premises its analysis on a 2016 Section 2(e)(2) refusal that it attributes to IMG, while the Office Action actually attached to the letter concerns an application filed by a different applicant, Fashion Week, Inc.; (b) omits any mention of Registration No. 4,870,711 for NYFW, which had been registered on the Principal Register since December 15, 2015 and is incontestable; (c) incorrectly asserts that registration on the Supplemental Register "doesn't confer any rights," even though Supplemental Register registration is not an admission that a mark lacks acquired distinctiveness, 15 U.S.C. § 1095; (d) speculates about abandonment based solely on a July 12, 2024 trade-press report of a change in IMG's business model, notwithstanding IMG's continuous use of the NYFW Marks; (e) disclaims any assurance as to how the USPTO would act; and (f) undertakes no likelihood-of-confusion analysis at all.

246. The letter's sole operative conclusion—that NYFW could be used with "distinctive additional terms" such as "NYFW, A N4XT Experience"—was promptly rejected when the

USPTO refused the N4XT Experience Applications as likely to be confused with the NYFW Marks.

247. N4XT nonetheless persisted after the USPTO's refusals and after receiving the IMG Demand. The Krasner letter therefore does not negate, and instead confirms, Defendants' knowledge of the NYFW Marks and the willfulness of their infringement.

248. Plaintiffs believe and therefore aver that the Krasner letter was written and given to N4XT to use as legal "cover" and to persuade laypersons not knowledgeable in trademark law that N4XT's actions were lawful when, in fact, the opposite was true.

249. Upon information and belief, N4XT and the Individual Defendants knew that the letter was not worth the paper it was written on but disseminated it to the outside world to further their unlawful objectives and, along the way, causing a waiver of any attorney-client privilege between Krasner and N4XT.

250. The infringement in this matter is willful and wanton.

251. Plaintiffs are entitled to injunctive relief and to recover Defendants' profits, Plaintiffs' damages, enhanced damages up to three times actual damages, and costs, and, because this is an exceptional case, reasonable attorneys' fees. 15 U.S.C. §§ 1116, 1117(a). The Individual Defendants are jointly and severally liable.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION, 15 U.S.C. § 1125(A)(1)(A)**

*(By 2294 and Signet against all Defendants)*

252. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

253. The NYFW Marks, registered and unregistered, are valid and protectable and are owned by 2294 and exclusively licensed to Signet.

254. Defendants' use of the Infringing Marks, and their representations that N4XT owns, operates, or is the official producer of New York Fashion Week, including the statements alleged in Section M above on N4XT's and Izemrane's LinkedIn profiles, in N4XT's press releases, and in Izemrane's solicitations of prospective investors and partners, constitute false designations of origin and false or misleading representations of fact likely to cause confusion as to the affiliation, connection, or association of N4XT with Plaintiffs and as to the origin, sponsorship, or approval of N4XT's services.

255. Signet, as exclusive licensee and operator of the NYFW platform, falls within the zone of interests protected by § 1125(a) and has suffered commercial injury proximately caused by Defendants' conduct.

256. Defendants' conduct was willful. Plaintiffs are entitled to the relief set forth in 15 U.S.C. §§ 1116 and 1117.

**COUNT III**
**FALSE ADVERTISING, 15 U.S.C. § 1125(A)(1)(B)**
*(By Signet against all Defendants)*

257. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

258. In commercial advertising and promotion directed to sponsors, designers, investors, and consumers, Defendants have falsely represented that N4XT "owns and operates New York Fashion Week," that N4XT and Izemrane are the "[o]wners and operators of NYFW," that NYFW Collections is "[t]he official platform to experience New York Fashion Week," that the FW App is the "official" digital platform for New York Fashion Week, and that its platforms and partnerships are official New York Fashion Week offerings. Defendants disseminated these statements as part of an organized campaign to promote N4XT's services, including through

N4XT's and Izemrane's LinkedIn profiles, press releases distributed nationally, and Izemrane's solicitations to prospective investors and partners, as alleged in Section M above.

259. Those statements are literally false: N4XT holds no registration or license for the NYFW Marks, its NYFW-formative applications have been refused, and Izemrane himself has admitted that New York Fashion Week is "not ownable" by N4XT. The statements are material to the purchasing and investment decisions of sponsors, designers, and partners, have been disseminated in interstate commerce, and have diverted sponsorship and designer business from Signet.

260. Signet is entitled to injunctive relief, corrective advertising, Defendants' profits, and damages.

**COUNT IV**
**CYBERSQUATTING, 15 U.S.C. § 1125(D)**

*(By 2294 and Signet against N4XT and Does 1–10)*

261. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

262. The NYFW Marks were distinctive when N4XT registered or used nyfwcollections.com and nyfwvenuecollective.com (the "Infringing Domains").

263. The Infringing Domains are confusingly similar to the NYFW Marks. N4XT registered, trafficked in, or used them with a bad-faith intent to profit from the NYFW Marks, including with knowledge of the IMG Demand and the USPTO's Section 2(d) refusals.

264. Plaintiffs are entitled to an order transferring the Infringing Domains to 2294, together with damages or, at their election, statutory damages of up to $100,000 per domain name. 15 U.S.C. §§ 1117(d), 1125(d)(1)(C).

**COUNT V**
**DECLARATORY JUDGMENT AND ORDER CONCERNING N4XT'S APPLICATIONS, 28 U.S.C. § 2201; 15 U.S.C. § 1119**

***(By 2294 against N4XT)***

265. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

266. An actual controversy exists concerning N4XT's right to use and register NY.FW COLLECTIONS, NY.FWLIVE, and the .FW COLLECTIVE-formative marks. N4XT has also threatened to seek cancellation of the NYFW registrations.

267. 2294 is entitled to a declaration that N4XT's applied-for marks infringe the NYFW Marks, that N4XT has no right to use or register them, and that the NYFW registrations are valid and enforceable, and to an order directing N4XT to expressly abandon its pending NYFW-formative applications and directing the Director of the USPTO to refuse any registration that issues on them. 15 U.S.C. § 1119.

**COUNT VI**
**COMMON-LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

*(By 2294 and Signet against all Defendants)*

268. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

269. Defendants' conduct constitutes trademark infringement and unfair competition under the common law of New York. Defendants acted in bad faith, misappropriating the labors, expenditures, and goodwill embodied in the NYFW Marks.

270. Plaintiffs are entitled to injunctive relief, compensatory damages, and, because Defendants' conduct was willful and wanton, punitive damages.

**COUNT VII**
**DECEPTIVE ACTS AND PRACTICES, N.Y. GEN. BUS. LAW § 349**

*(By 2294 and Signet against all Defendants)*

271. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

272. Defendants' representations to the public that N4XT owns and operates New York Fashion Week, including on N4XT's and NYFW Collections' public LinkedIn pages and in N4XT's press releases as alleged in Section M above, their promotion to consumers of the FW App as the "official" New York Fashion Week digital platform, and their sale of NYFW-branded tickets, events, and experiences, are consumer-oriented acts that are materially misleading and that harm the public interest in accurate information about the source of the event.

273. Plaintiffs have been injured thereby and are entitled to injunctive relief, damages, and attorneys' fees under N.Y. Gen. Bus. Law § 349(h).

**COUNT VIII BREACH OF CONTRACT**

***(By Signet, as assignee of KF Fashion, against N4XT)***

274. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

275. The Framework Agreement is a valid and binding contract between KF Fashion and N4XT. KF Fashion performed, including by funding the KF Capital.

276. N4XT breached the Framework Agreement by, among other things: (a) filing the KFN Applications in its own name in violation of § 8; (b) appropriating Venue Collective and other NYFW Events intellectual property that § 8 vests solely in KFN Events; (c) failing to remit event and sponsorship revenue directly to KF Fashion without set-off, and failing to apply in-kind sponsorships for KF Fashion's sole benefit, in violation of § 7; (d) exceeding and diverting

approved budgets in violation of §§ 7 and 9; (e) failing to repay KF Fashion's investments with 8% interest before any distribution, in violation of § 10; and (f) breaching the implied covenant of good faith and fair dealing by purporting to terminate the venture in order to appropriate its fruits.

277. As a direct result, Signet, as KF Fashion's assignee, has been damaged in an amount to be determined at trial but in excess of $4,000,000, plus interest at the contractual rate of 8% per annum from the date of each advance. Those damages include, in the alternative to expectation damages, KF Fashion's reliance expenditures made in furtherance of the venture, including the sums paid under and in support of the CFDA Agreement, which N4XT's breaches rendered worthless.

**COUNT IX**
**BREACH OF FIDUCIARY DUTY**

*(By Signet, as assignee of KFN Events and, separately, as assignee of KF Fashion, against all Defendants)*

278. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

279. As Managing Members of KFN Events, Izemrane and Abell owed KFN Events fiduciary duties of loyalty, care, and good faith, including the duty not to divert company funds or assets and not to usurp business opportunities belonging to the company. N4XT, as a member of KFN Events that controlled the company's event production, sponsorship, and designer and venue relationships through its designated Managing Members, owed KFN Events the same duties.

280. Independently, N4XT and the Individual Defendants owed KF Fashion, as N4XT's co-venturer in the KFN Events joint venture, a duty of undivided loyalty, including the duty to deal honestly with KF Fashion concerning the use of the KF Capital and not to appropriate for N4XT the opportunities of the venture.

281. Defendants breached their duties to KFN Events by misappropriating the KF Capital and other company funds and assets for N4XT's own purposes, and by usurping company opportunities—including the Nestlé and SAP relationships, the Venue Collective platform (rebranded as "NYFW Collections"), the designer and venue network, the KFN Applications, the digital platform now operated as the FW App, and the "Home of Football" opportunity that underlies the Culture Shop Action. Each opportunity was within KFN Events' line of business, was one in which KFN Events had an interest or expectancy, and was financed with company resources. Defendants took each for N4XT without offering or disclosing it to KFN Events, and concealed those diversions.

282. Defendants breached their duties to KF Fashion by inducing KF Fashion to fund the venture, diverting the KF Capital to N4XT's own purposes, concealing those diversions, failing to account, and purporting to terminate the venture in order to appropriate its fruits, thereby depriving KF Fashion of the revenue, repayment, and 8% return to which it was entitled.

283. Signet, as assignee of KFN Events, is entitled to the damages suffered by KFN Events and to disgorgement of all benefits Defendants obtained through the misappropriation of company funds and the usurpation of company opportunities. Signet, as assignee of KF Fashion, is entitled to the damages suffered by KF Fashion directly, to the extent not duplicative. Signet is also entitled to punitive damages.

284. The damages recoverable by Signet include the sums paid under and in support of the CFDA Agreement, which were spent to build recognition and visibility for KFN Events and its platform and were wasted when Defendants diverted the platform to N4XT and induced CFDA to abandon KFN Events, together with the lost value of the remaining term of the CFDA Agreement.

## COUNT X
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

*(By Signet, as assignee of KFN Events and of KF Fashion, against Izemrane, Abell, and Does 1–10)*

285. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

286. To the extent any Individual Defendant is found not to have owed fiduciary duties in his own right, each knew of N4XT's fiduciary duties to KF Fashion and KFN Events and knowingly provided substantial assistance in their breach, causing the damages alleged above.

## COUNT XI
## CONVERSION

*(By Signet, as assignee of KFN Events and of KF Fashion, against all Defendants)*

287. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

288. KFN Events had ownership of and a possessory right to specific, identifiable funds, including the KF Capital advanced to and for KFN Events for designated budgets and the sponsorship and participation fees paid under KFN Events' contracts. KF Fashion separately had a possessory right to the event and sponsorship revenue that § 7 required N4XT to remit directly to KF Fashion. Defendants exercised unauthorized dominion over those funds, to the exclusion of the respective rights of KFN Events and KF Fashion. Signet, as assignee of each, is entitled to damages in an amount to be determined at trial.

## COUNT XII
## TORTIOUS INTERFERENCE WITH CONTRACT AND WITH PROSPECTIVE ECONOMIC ADVANTAGE

(By Signet, as assignee of KFN Events, against N4XT, Izemrane, and Does 1–10)

289. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

290. The Nestlé Agreement was a valid and enforceable contract between KFN Events and Nestlé. Defendants knew of the Nestlé Agreement, its multi-season Term, and its prohibition on assignment, because N4XT, through Izemrane and Abell as Managing Members of KFN Events, managed the venture's sponsor relationships.

291. Without justification, Defendants intentionally procured Nestlé's termination of the Nestlé Agreement by, among other things, falsely representing to Nestlé that KFN Events' role had shifted to N4XT, telling Nestlé that it would need to contract directly with N4XT, and withdrawing the personnel and resources on which KFN Events' performance depended. Nestlé terminated the Nestlé Agreement as a direct result.

292. Independently, KFN Events had an existing and reasonably expected continuing business relationship with Nestlé extending beyond the Term of the Nestlé Agreement. Defendants knowingly interfered with that relationship for the purpose of capturing it for N4XT, and did so through dishonest, unfair, and improper means, including misrepresentations to Nestlé and breaches of the fiduciary duties Defendants owed to KFN Events and KF Fashion. But for Defendants' conduct, KFN Events would have continued and expanded its sponsorship relationship with Nestlé.

293. As a direct and proximate result, Signet, as assignee of KFN Events, has been damaged in an amount to be determined at trial, including not less than $170,000 in lost activation fees under the Nestlé Agreement and the lost value of the Nestlé relationship over future seasons. Because Defendants acted willfully and in conscious disregard of KFN Events' rights, Signet is also entitled to punitive damages.

**COUNT XIII**
**UNJUST ENRICHMENT (IN THE ALTERNATIVE)**
***(By Signet, as assignee of KFN Events and of KF Fashion, against all Defendants)***

294. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

295. To the extent the Framework Agreement is found not to govern any portion of the conduct alleged, Defendants were enriched at the expense of KFN Events and KF Fashion by the KF Capital and the assets, relationships, and opportunities it purchased, and equity and good conscience require restitution.

**COUNT XIV**
**ACCOUNTING AND CONSTRUCTIVE TRUST**
***(By Signet, as assignee of KFN Events and of KF Fashion, against all Defendants)***

296. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

297. A fiduciary and confidential relationship existed between Defendants, on the one hand, and KFN Events and KF Fashion, on the other; Defendants received and controlled the KF Capital in reliance on promises that it would be used for the venture; and Defendants have been unjustly enriched by its diversion.

298. Signet, as assignee of KFN Events and of KF Fashion, is entitled to a full accounting of the KF Capital and of all revenue, sponsorships, and opportunities derived from it, and to the imposition of a constructive trust over all such proceeds, including any recovery N4XT obtains in the Culture Shop Action, together with an injunction barring N4XT from compromising, assigning, or dissipating those proceeds pending judgment.

## COUNT XV
## USURPATION OF CORPORATE OPPORTUNITY AND BREACH OF THE DUTY OF LOYALTY

***(By Signet, as assignee of KFN Events and, additionally or alternatively, as assignee of KF Fashion, against all Defendants)***

299. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

300. The Venue Collective, its continuation into the 2026 seasons and beyond, the digital platform contemplated in the KFN Events business plan and now operated as the FW App, and the designer, venue, sponsorship, and retail relationships built on that platform (collectively, the "Venue Collective Opportunity") were within KFN Events' line of business; were opportunities in which KFN Events had an existing interest and expectancy; and were opportunities KFN Events was financially able to pursue through the KF Capital and KF Fashion's continuing funding of the venture.

301. N4XT, Izemrane, and Abell learned of and developed the Venue Collective Opportunity solely in their capacities as member and Managing Members of KFN Events, and with company resources and confidential information.

302. By taking the Venue Collective Opportunity for N4XT, operating it as NYFW Collections, and exploiting the sponsor, designer, venue, and retail relationships that came with it, Defendants placed their own interests in a position adverse to KFN Events and breached their duty of loyalty. Defendants did not present the opportunity to KFN Events and did not obtain its informed consent. N4XT's purported withdrawal does not relieve Defendants of liability for an opportunity that arose, and that they began to divert, while they were fiduciaries.

303. Additionally or alternatively, the Venue Collective Opportunity was an opportunity of the joint venture between KF Fashion and N4XT, and N4XT's appropriation of it breached the duty of loyalty N4XT owed KF Fashion as its co-venturer.

304. Signet is entitled to the imposition of a constructive trust over NYFW Collections and all revenue, profits, sponsorships, contracts, and other benefits derived from it; disgorgement of Defendants' profits; an order, subject to the relief awarded to 2294 on Count IV, directing N4XT to assign to Signet, as assignee of KFN Events, all trademark applications, domain names, contracts, and other assets relating to the Venue Collective Opportunity; compensatory damages; and, because Defendants acted willfully and in conscious disregard of the rights of KFN Events and KF Fashion, punitive damages.

## COUNT XVI
## TORTIOUS INTERFERENCE WITH THE CFDA AGREEMENT AND WITH PROSPECTIVE ECONOMIC ADVANTAGE

**(By Signet, as assignee of KFN Events, against N4XT, Izemrane, Abell, and Does 1–10)**

305. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

306. The CFDA Agreement was a valid and enforceable contract between KFN Events and CFDA. Defendants knew of the CFDA Agreement and its terms: Izemrane signed it for KFN Events, Izemrane and Abell managed the relationship as Managing Members of KFN Events, and Mr. Kolb's affiliation with the N4XT Advisory Board arose under it.

307. Without justification, Defendants intentionally procured CFDA's breach, termination, or abandonment of the CFDA Agreement, including by soliciting CFDA to align with N4XT, representing that N4XT rather than KFN Events was the venture's successor and the holder of CFDA's support, and diverting to N4XT the platform and programming that the CFDA relationship was meant to support.

308. Independently, KFN Events had an existing and reasonably expected continuing relationship with CFDA, including through the remainder of the term and the 2028 and 2029 extension periods. Defendants knowingly interfered with that relationship to capture it for N4XT, and did so through wrongful means, including misrepresentations to CFDA and breaches of the fiduciary duties Defendants owed to KFN Events and KF Fashion. As fiduciaries of KFN Events, Defendants had no privilege or economic justification to act against the company's interest in its own contract.

309. As a direct and proximate result, Signet, as assignee of KFN Events, has been damaged in an amount to be determined at trial, including the sums paid under and in support of the CFDA Agreement that were rendered worthless, the lost value of the remaining term and extension rights, and the lost goodwill and visibility that the CFDA relationship was intended to generate for KFN Events. Because Defendants acted willfully and in conscious disregard of KFN Events' rights, Signet is also entitled to punitive damages.

**COUNT XVII**
**FALSE ADVERTISING, N.Y. GEN. BUS. LAW § 350**
**(By 2294 and Signet against all Defendants)**

310. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

311. Defendants' advertising directed to New York consumers, including the representations on nyfwcollections.com, n4xtexperiences.com, N4XT's and NYFW Collections' LinkedIn pages, N4XT's press releases, the FW App, and app-store listings that N4XT owns and operates New York Fashion Week and that its platforms are the "official" New York Fashion Week platforms, is false and misleading in material respects and constitutes false advertising under N.Y. Gen. Bus. Law § 350.

312. Consumers, including ticket purchasers, app users, and shoppers, have been and are likely to be misled by that advertising, and Plaintiffs have been injured thereby. Plaintiffs are entitled to injunctive relief, actual damages, and reasonable attorneys' fees under N.Y. Gen. Bus. Law § 350-e.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants, jointly and severally, as follows:

1. Preliminarily and permanently enjoining Defendants, and all persons acting in concert with them, from using NYFW, NEW YORK FASHION WEEK, NY.FW, NYFW COLLECTIONS, NEW YORK FASHION WEEK COLLECTIONS, NYFWLIVE, NYFW THE VENUE COLLECTIVE, or any confusingly similar designation, including in the FW App or any app-store listing, and from representing that N4XT owns, operates, or is the official producer or official platform of New York Fashion Week;
2. Ordering Defendants, at their own expense, to undertake corrective advertising in a form and through channels approved by the Court, including corrective notices to sponsors, designers, investors, and partners, including SAP and any person to whom Defendants represented that N4XT owns or operates New York Fashion Week, and corrective statements on n4xtexperiences.com, nyfwcollections.com, the FW App, and Defendants' social-media profiles disclosing that N4XT does not own, operate, or hold any license to New York Fashion Week or the NYFW Marks; ordering Defendants to remove all such representations from their websites and social-media profiles; and ordering Defendants to file a sworn report of compliance within 30 days, 15 U.S.C. § 1116(a);
3. Ordering the transfer of the Infringing Domains to 2294;
4. Declaring that N4XT has no right to use or register its NYFW-formative marks, ordering N4XT to abandon its pending applications, and certifying the order to the Director of the USPTO under 15 U.S.C. § 1119;
5. Ordering the destruction of all infringing materials, 15 U.S.C. § 1118;
6. Awarding Defendants' profits, Plaintiffs' actual damages, including the cost of corrective advertising reasonably necessary to dispel the confusion caused by Defendants' false claims of ownership of New York Fashion Week, enhanced damages, and statutory damages under 15 U.S.C. § 1117;
7. Awarding Signet, as assignee of KF Fashion and as assignee of KFN Events, compensatory damages on the KF Fashion Claims and the KFN Claims, respectively, in an aggregate amount in excess of $4,000,000, without duplication,

with interest on the KF Fashion Claims at 8% per annum from the date of each advance;

8. Ordering an accounting and imposing a constructive trust over the KF Capital and all assets, revenues, and opportunities derived from it, including any recovery in the Culture Shop Action;

9. Imposing a constructive trust over N4XT's NYFW Collections platform and all revenue, profits, sponsorships, and contracts derived from it, ordering disgorgement, and, subject to the relief awarded to 2294 on Count IV, directing N4XT to assign to Signet, as assignee of KFN Events, all applications, contracts, and other assets relating to The Venue Collective and NYFW Collections;

10. Awarding punitive damages on the state-law claims;

11. Awarding attorneys' fees and costs, 15 U.S.C. § 1117(a) and N.Y. Gen. Bus. Law §§ 349(h) and 350-e;

12. Awarding pre- and post-judgment interest; and

13. Granting such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all issues so triable.

Dated: New York, New York
November 16, 2026

**FOX ROTHSCHILD LLP**

By: *Ely Goldin*

Ely Goldin
980 Jolly Road, Suite 110
PO Box 3001
Blue Bell, PA 19422
Telephone: (610) 397-6509
Facsimile: (610) 397-0450
Email: egoldin@foxrothschild.com

*Attorneys for Plaintiffs 2294, LLC and Signet Fashion LLC, individually and as assignee of KF Fashion, LLC and KFN Events, LLC*